UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, *ex rel.* KATHERINE VERHULST , <br><br> Plaintiffs, <br><br> v. <br><br> QUALITY THERAPY & CONSULTATION, INC., THE CARLTON AT THE LAKE, INC., LAKE SHORE HEALTHCARE AND REHABILITATION CENTRE LLC, RIDGEVIEW REHAB & NURSING CENTER, THE WESTWOOD MANOR, INC., WINSTON MANOR CONVALESCENT & NURSING HOME, BALMORAL HOME, INC., ATRIUM HEALTH CARE CENTER LTD., and NORRIDGE GARDENS, <br><br> Defendants. | No. 14 C 2083 <br><br> Judge Durkin |
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> QUALITY THERAPY & CONSULTATION, INC., THE CARLTON AT THE LAKE, INC., LAKE SHORE HEALTHCARE AND REHABILITATION CENTRE LLC, RIDGEVIEW REHAB & NURSING CENTER, BALMORAL HOME, INC., and FRANCES PARISE, <br><br> Defendants. | |

## CONSENT JUDGMENT AND SETTLEMENT AGREEMENT

This Consent Judgment and Settlement Agreement (Agreement) is entered into among the United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), Quality Therapy & Consultation, Inc., and Katherine Verhulst (hereafter collectively referred to as "the Parties"), through their authorized representatives.

### Recitals

A.      Quality Therapy & Consultation, Inc., which is no longer in business, was an entity that provided skilled therapy services to Medicare beneficiaries by contract with third party facilities. Those facilities submitted claims for payment to the United States for those services. Quality Therapy & Consultation, Inc. also had its own National Provider Identifier, 1982633715, for submission of claims for payment to federal healthcare programs.

B.      On March 25, 2014, Katherine Verhulst (relator) filed a *qui tam* action in the United States District Court for the Northern District of Illinois, captioned *United States ex rel. Verhulst v. Quality Therapy & Consultation, Inc., et al.*, No. 14 C 2083, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and filed an amended complaint on July 18, 2016 (the Civil Action). She alleged that defendants conspired to overbill Medicare and Medicaid for skilled nursing and skilled rehabilitation therapy services that were unnecessary and/or not provided, and knowingly caused false and fraudulent claims to be presented to the United States and the State of Illinois. The United States intervened in the Civil Action on September 28, 2017.

C.      The United States contends that Quality Therapy & Consultation, Inc., submitted or caused to be submitted claims to the Medicare Program, Title XVIII of the Social Security Act.

D.     The United States contends that it has certain civil claims, as specified in Paragraph 3 of the Terms and Conditions below, against Quality Therapy & Consultation, Inc., for allegedly causing the submission of false claims to Medicare by engaging in the following conduct (hereinafter the Covered Conduct) from January 1, 2009 through October 2017:

1.     Providing services that were not medically necessary to Medicare beneficiaries in order to increase Medicare payments for those services, for its own benefit and for the benefit of its skilled nursing facility clients, including in connection with defendants The Carlton at the Lake, Inc., Lake Shore Healthcare and Rehabilitation Centre LLC, Ridgeview Rehab & Nursing Center, and Balmoral Home, Inc.

2.     In response to Medicare contractor or auditor additional documentation requests and audits, QTC engaged in alteration of patient medical records, including by gathering and backdating missing physician signatures on therapy orders and plan of care certifications, and editing weekly therapy notes and plans of care (or updated plans of care), and then provided new or altered records to Medicare contractors or auditors, without stating that the documentation being produced contained alterations or additions made after the Medicare contractors' request for the records.

3.     In response to a civil investigative demand ("CID") served by the U.S. Attorney's Office during the course of the investigation of this *qui tam*, QTC worked with staff at The Carlton at the Lake to alter documentation requested by the CID, including by gathering and backdating missing physician signatures on orders and certifications, and editing therapists' documentation, and provided altered documentation to the United States, without informing the U.S. Attorney's Office that the documentation being produced contained alterations or additions made after the CID was served.

2

4.      Setting, and striving to meet, quotas for the proportion of Medicare Part A beneficiaries utilizing the highest-possible reimbursement level (or RUG), particularly upon admission, regardless of the particular patients' actual needs.

5.      Increasing the amount of reported therapy during "assessment reference periods" and then providing less therapy to those patients outside of those reference periods, prior to October 1, 2011.

6.      Scheduling and claiming the provision of therapy, even after the patients' therapist had recommended discharge.

7.      Shifting minutes of planned therapy among disciplines to ensure targeted therapy reimbursement levels were achieved, regardless of the clinical need for therapy.

8.      Reporting time spent on initial evaluation as therapy time rather than evaluation time.

9.      Reporting that skilled therapy had been provided when in fact the patients were not participating in therapy or unable to undergo or benefit from skilled therapy.

10.     Increasing the length of patients' receipt of skilled therapy services, in order to increase utilization of the 100-day maximum for Part A skilled therapy services, regardless of patients' actual needs.

E.      This Settlement Agreement is neither an admission of liability by QTC nor a concession by the United States that its claims are not well founded.

F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

3

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

### Terms and Conditions

1.      Quality Therapy & Consultation, Inc. (QTC) agrees to the entry of judgment in favor of the United States and against QTC for $1,096,866 (Judgment Amount), which constitutes restitution to the United States. As an initial partial payment of the Judgement Amount, QTC shall pay to the United States $332,998, no later than 30 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of Illinois. To further facilitate the satisfaction of this judgment fully or partially, QTC irrevocably assigns to the United States the accounts receivable debts listed in Schedule A to this Agreement (the "assigned debts"). The assignment of the debts of itself is not a full or partial satisfaction of the judgment debt; the actual funds recovered by the United States on the assigned debts shall be credited against the Judgment Amount. Within 15 days of the effective date of this agreement, QTC shall provide the United States with all documents and business records related to the assigned debts and shall execute any documents necessary to evidence the assignment. QTC and its officers agree to provide assistance to the United States in proving up the assigned debts in any administrative or judicial proceeding, including but not limited to providing affidavits and testimony. QTC warrants that no previous assignment of the assigned debt has been made, that no party can claim or assert a security or lien interest superior to the United States.

2.      Conditioned upon the United States receiving payments on the Judgment Amount, the United States agrees that it shall pay to Relator by electronic funds transfer 19 percent of each

4

such payment received under the Settlement Agreement as soon as feasible after receipt of the payment.

3.      Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon full payment of the Judgment Amount, and subject to Paragraph 22, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Quality Therapy & Consultation, Inc. from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 5 below and attorney's fees and costs for Relator as set forth in 31 U.S.C. §3730(d)(1), and conditioned upon full payment of the Judgment Amount, and subject to Paragraph 22, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Quality Therapy & Consultation, Inc. from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.      Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

5

c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability based upon obligations created by this Agreement;

f.     Any liability of individuals;

g.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.     Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment(s) described in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.     Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Quality Therapy & Consultation, Inc. from any liability to Relator arising from the filing of the Civil Action.

8.     In compromise and settlement of the rights of OIG-HHS to exclude Quality Therapy & Consultation, Inc. pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the Covered Conduct, Quality Therapy & Consultation, Inc. agrees to be permanently excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as

defined in 42 U.S.C. § 1320a-7b(f). The permanent exclusion shall be effective upon the Effective Date of this Agreement. Such exclusion shall have national effect. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Quality Therapy & Consultation, Inc., in any capacity while QTC is excluded. This payment prohibition applies to QTC and all other individuals and entities (including, for example, anyone who employs or contracts with QTC, and any hospital or other provider where QTC provides services). The exclusion applies regardless of who submits the claim or other request for payment. Violation of the conditions of the exclusion may result in criminal prosecution and the imposition of civil monetary penalties and assessments. QTC further agrees to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. QTC waives any further notice of the exclusion and agrees not to contest such exclusion either administratively or in any state or federal court.

9.    Quality Therapy & Consultation, Inc. has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. QTC warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which QTC had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by QTC on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $50,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit based

7

on the Covered Conduct, or (b) let the Agreement stand and collect the full Judgment Amount plus one hundred percent (100%) of the value of the net worth of QTC previously undisclosed. QTC agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

10. In the event that the United States, pursuant to Paragraph 9 (concerning disclosure of assets), above, opts to rescind this Agreement, Quality Therapy & Consultation, Inc. agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to QTC that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on March 25, 2014.

11. Quality Therapy & Consultation, Inc. waives and shall not assert any defenses QTC may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12. Quality Therapy & Consultation, Inc. fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that QTC has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents,

employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13. Quality Therapy & Consultation, Inc. fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that QTC has asserted, could have asserted, or may assert in the future against the Relator, related to Civil Action and the Relator's investigation, prosecution thereof, and the Relator's employment with Quality Therapy & Consultation, Inc.

14. The Judgment Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, or any state payer, related to the Covered Conduct); and QTC agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

15. Quality Therapy & Consultation, Inc. agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of QTC, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

9

(3)     Quality Therapy & Consultation, Inc.'s investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment Quality Therapy & Consultation, Inc. makes to the United States pursuant to this Agreement and any payments that QTC may make to Relator, including costs and attorneys fees.

b.      Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for by Quality Therapy & Consultation, Inc., and QTC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by QTC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.      Treatment of Unallowable Costs Previously Submitted for Payment:   Quality Therapy & Consultation, Inc. further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by QTC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the

10

effect of the inclusion of the Unallowable Costs. QTC agrees that the United States, at a minimum, shall be entitled to recoup from QTC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

16.     Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Quality Therapy & Consultation, Inc. or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on QTC or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

17.     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Quality Therapy & Consultation's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

18.     Quality Therapy & Consultation, Inc. agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, QTC shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. QTC further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any

investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

19. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 20 (waiver for beneficiaries paragraph), below.

20. Quality Therapy & Consultation, Inc. agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

21. The Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Quality Therapy & Consultation, Inc., within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Quality Therapy & Consultation, Inc. was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

22. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Quality Therapy & Consultation, Inc. commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of QTC's debts, or seeking to adjudicate Quality Therapy & Consultation, Inc. as bankrupt or insolvent; or

(b) seeking appointment of a receiver, trustee, custodian, or other similar official for Quality Therapy & Consultation, Inc., or for all or any substantial part of QTC's assets, QTC agrees as follows:

      a.      Quality Therapy & Consultation, Inc.'s obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Quality Therapy & Consultation, Inc. shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Quality Therapy & Consultation, Inc.'s obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Quality Therapy & Consultation, Inc. was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Quality Therapy & Consultation, Inc.

      b.      If Quality Therapy & Consultation, Inc.'s obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Quality Therapy & Consultation, Inc. for the claims that would otherwise be covered by the releases provided in Paragraphs 3 and 4 above. Quality Therapy & Consultation, Inc. agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Quality Therapy & Consultation, Inc. shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Quality Therapy & Consultation, Inc. shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to

any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar days of written notification to Quality Therapy & Consultation, Inc. that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on March 25, 2014; and (iii) the United States has a valid claim against Quality Therapy & Consultation, Inc. in the amount of $54,259,281, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c.     Quality Therapy & Consultation, Inc. acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

      23.     Upon full execution of this Agreement, under the terms of Paragraph 33, the Parties agree that the United States shall promptly submit this Consent Judgment and Settlement Agreement to be ordered by the court.

      24.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception of attorney's fees and costs for Relator as set forth in 31 U.S.C. §3730(d)(1).

      25.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

      26.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Illinois. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

27.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

28.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

29.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

30.     This Agreement is binding on Quality Therapy & Consultation's successors, transferees, heirs, and assigns.

31.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

32.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

33.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<strong><u>THE UNITED STATES OF AMERICA</u></strong>

JOHN R. LAUSCH, Jr.
United States Attorney

Dated: 10/11/2018

By: _____
SARAH J. NORTH
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1413
sarah.north@usdoj.gov

15

Dated: 10/10/2018

By: _Lisa M. Re_____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Dep't of Health and Human Services

## QUALITY THERAPY & CONSULTATION, INC.

Dated: __09/06/18__

_Fran Parise_____
FRANCES PARISE, President
Quality Therapy & Consultation, Inc.

Dated: __08/23/2018__

_Julie Port_____
JULIE PORTER
Salvatore Prescott & Porter
1010 Davis Street
Evanston, IL 60201

Counsel for Quality Therapy & Consultation, Inc.

## KATHERINE VERHULST, RELATOR

Dated: _____

_____
KATHERINE VERHULST, Relator

Dated: _____

_____
BRIAN MARKOVITZ
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Counsel for Relator Katherine Verhulst

16

Dated: _____          By: _____
                                LISA M. RE
                                Assistant Inspector General for Legal Affairs
                                Office of Counsel to the Inspector General
                                Office of Inspector General
                                U.S. Dep't of Health and Human Services


### QUALITY THERAPY & CONSULTATION, INC.


Dated: _____          _____
                                FRANCES PARISE, President
                                Quality Therapy & Consultation, Inc.


Dated: _____          _____
                                JULIE PORTER
                                Salvatore Prescott & Porter
                                1010 Davis Street
                                Evanston, IL 60201

                                Counsel for Quality Therapy & Consultation, Inc.


### KATHERINE VERHULST, RELATOR


Dated: _8/24/18_          _____
                                KATHERINE VERHULST, Relator


Dated: _8/27/18_          _____
                                BRIAN MARKOVITZ
                                Joseph, Greenwald & Laake, P.A.
                                6404 Ivy Lane, Suite 400
                                Greenbelt, MD 20770

                                Counsel for Relator Katherine Verhulst


16

EXHIBIT A

| Facility Name | Legal Business Names | Address | NPI NUMBER | IDPH NUMBER | Amount Due |
|---|---|---|---|---|---|
| Balmoral Home | BALMORAL HOME INC | 2055 West Balmoral Avenue, Chicago, IL 60625-1001 | 1730183203 | 39966 | $215,899.20 |
| Contact Information: Barry Taerbaum, Marvin Mermelstein | 773-562-8661 Cell-773-447-3185 847-679-7484 | | | | |
| Chicago Ridge Nursing Center | BM OF CHICAGO RIDGE LLC | 10602 Southwest Highway, Chicago Ridge, IL 60415-1429 | 1285630723 | 45815 | $189,468.08 |
| Contact Information: Barry Taerbaum, Marvin Mermelstein | 773-562-8661 Cell-773-447-3185 847-679-7484 | | | | |
| Birchwood Plaza | BIRCHWOOD PLAZA INC | 1426 West Birchwood Avenue, Chicago, IL 60626-1807 | 1003801093 | 28696 | $147,273.61 |
| Contact Information: Cathy Singer | 847-869-7744 | | | | |
| Dobson Plaza | DOBSON PLAZA NURSING & REHAB CENTER LLC | 120 Dodge Avenue, Evanston, IL 60202-3622 | 1316232184 | 51508 | $65,941.52 |
| Contact Information: Cathy Singer | 847-869-7744 | | | | |
| Paramount of Oak Park | PARAMOUNT OF OAK PARK REHABILITATION & NURSING CENTER LLC | 625 North Harlem Avenue, Oak Park, IL 60302-1805 | 1366781502 | 52233 | $10,000.00 |
| Contact Information: David Wengrow | 773-304-8863 | | | | |

| Facility Name | | | NPI NUMBER | IDPH NUMBER | Amount Due |
|---|---|---|---|---|---|
| Carlton at the Lake | CARLTON AT THE LAKE INC | 725 West Montrose Avenue, Chicago, IL 60613-1515 | 1598136632 | 53934 | $36,206.84 |
| Contact Information | | | | | |
| Shia Berdugo | 773-415-7272 | | | | |

| Facility Name | | | NPI NUMBER | IDPH NUMBER | Amount Due |
|---|---|---|---|---|---|
| The Grove Fox Valley | AURORA PAC LLC | 1601 North Farnsworth Avenue, Aurora, IL 60505-1509 | 1851715262 | 52621 | $99,078.98 |
| Contact Information | | | | | |
| Reuven Levitin | 630-898-1180 | | | | |
| Shia Berdugo | 773-415-7272 | | | | $763,868.23 |