

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA and the )
STATE OF ILLINOIS, *ex rel.* KATHERINE )
VERHULST , )
 )
                Plaintiffs, )
 )
                v. )
 )
QUALITY THERAPY & )
CONSULTATION, INC., THE CARLTON )
AT THE LAKE, INC., LAKE SHORE )
HEALTHCARE AND REHABILITATION )
CENTRE LLC, RIDGEVIEW REHAB & )
NURSING CENTER, THE WESTWOOD )
MANOR, INC., WINSTON MANOR )
CONVALESCENT & NURSING HOME, )      No. 14 C 2083
BALMORAL HOME, INC., ATRIUM )
HEALTH CARE CENTER LTD., and )      Judge Durkin
NORRIDGE GARDENS, )
 )
                Defendants. )
_____ )
UNITED STATES OF AMERICA, )
 )
                Plaintiff-Intervenor, )
 )
                v. )
 )
QUALITY THERAPY & )
CONSULTATION, INC., *et al.* )
 )
                Defendants. )

## CONSENT JUDGMENT

Upon consent of the parties, and the court being fully advised:

IT IS HEREBY ORDERED that:

(1)     Judgment is entered in favor of the United States of America against The Carlton at the Lake, Inc. for $3,634,426, as to all counts in the complaint naming Carlton and as provided in the Consent Judgment and Settlement Agreement attached hereto;

(2)     The district court maintains jurisdiction over the case to enforce the terms of the settlement and payment guaranty.

ENTER:

Thomas Durkin, J.
United States District Judge

Dated: _____6/6/2019_____

## CONSENT JUDGMENT AND SETTLEMENT AGREEMENT

This Consent Judgment and Settlement Agreement (Agreement) is entered into among the United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), The Carlton at the Lake, Inc., and Katherine Verhulst (hereafter collectively referred to as "the Parties"), through their authorized representatives.

### Recitals

A.      The Carlton at the Lake, Inc. (Carlton), which is no longer in business, was a skilled nursing facility that, among other things, provided skilled therapy services to Medicare beneficiaries through its contractor Quality Therapy & Consultation, Inc. (QTC). Carlton submitted claims for payment to the United States for those services. Carlton used the following National Provider Identifier, 1285796714, for submission of claims for payment to federal healthcare programs.

B.      On March 25, 2014, Katherine Verhulst (Relator) filed a *qui tam* action in the United States District Court for the Northern District of Illinois, captioned *United States ex rel. Verhulst v. Quality Therapy & Consultation, Inc., et al.*, No. 14 C 2083, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and filed an amended complaint on July 18, 2016 (the Civil Action). She alleged that defendants conspired to overbill Medicare and Medicaid for skilled nursing and skilled rehabilitation therapy services that were unnecessary and/or not provided, and knowingly caused false and fraudulent claims to be presented to the United States and the State of Illinois. The United States intervened in the Civil Action on September 28, 2017.

C.     The United States contends that Carlton submitted or caused to be submitted claims to the Medicare Program, Title XVIII of the Social Security Act.

D.     The United States contends that it has certain civil claims, as specified in Paragraph 3 of the Terms and Conditions below, against Carlton, for causing the submission of false claims to Medicare by engaging in the following conduct (hereinafter the Covered Conduct) from August 1, 2009 through November 18, 2015:

1.     In response to a civil investigative demand ("CID") served by the U.S. Attorney's Office during the course of the investigation of this *qui tam*, Carlton staff worked with QTC and third parties to alter documentation requested by the CID, including by gathering and backdating missing physician signatures on orders and certifications, and editing therapists' documentation, and provided altered documentation to the United States, without informing the U.S. Attorney's Office that the documentation being produced contained alterations or additions made after the CID was served.

2.     Providing services, through QTC, that were not medically necessary and did not meet the requirements of Medicare Part A to Medicare beneficiaries in order to increase payments for those services, for example in the following ways:

a.     Setting, and striving to meet, quotas for the proportion of Medicare Part A beneficiaries utilizing the highest-possible reimbursement level (or RUG), particularly upon admission, regardless of the particular patients' actual needs.

b.     Increasing the amount of reported therapy during "assessment reference periods" and then providing less therapy to those patients outside of those reference periods, prior to October 1, 2011.

2

c.      Scheduling and claiming the provision of therapy, even after the patients' therapist had recommended discharge.

d.      Scheduling and claiming the provision of skilled therapy, although the patient was not appropriate for skilled therapy, either at the level provided, for the discipline provided, or entirely.

e.      Scheduling and claiming the provision of therapy, even though skilled therapy services were not provided for that period.

f.      Shifting minutes of planned therapy among disciplines to ensure targeted therapy reimbursement levels were achieved, regardless of the clinical need for therapy.

g.      Reporting time spent on initial evaluation as therapy time rather than evaluation time.

h.      Reporting that skilled therapy had been provided when in fact the patients were not participating in therapy or unable to undergo or benefit from skilled therapy.

i.      Increasing the length of patients' receipt of skilled therapy services, in order to increase utilization of the 100-day maximum for Part A skilled therapy services, regardless of patients' actual needs.

E.      This Settlement Agreement is neither an admission of liability by Carlton nor a concession by the United States that its claims are not well founded.

F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Consent Judgment and Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

3

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

### Terms and Conditions

1.  Carlton agrees to the entry of judgment in favor of the United States and against Carlton for $3,634,426 (Judgment Amount), $1,817,213 of which constitutes restitution to the United States. As an initial partial payment of the Judgment Amount, Carlton shall pay to the United States $1,500,000, no later than 15 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of Illinois. Carlton shall satisfy the remaining balance of the Judgment Amount, including post-judgment interest, by making quarterly payments of $274,407.53 beginning 105 days after the Effective Date of this Agreement and continuing every 90 days until the debt is satisfied as further specified in the schedule attached and incorporated hereto as Exhibit A. The United States will amend the payment schedule once the parties establish the Effective Date of this Agreement to further specify the date of each payment and to fix the rate of post-judgment interest to reflect the federal judgment interest rate on the Effective Date of this Agreement. The Jack L. Rajchenbach Grandchildren's Trust (the "Trust"), through its co-trustees, Chaim Rajchenbach and Moshe Rajchenbach, guarantee the payment of the Judgment Amount and interest, as stated in the Guaranty Agreement attached and incorporated as Exhibit B.

2.  Conditioned upon the United States receiving payment on the Consent Judgment and Settlement Agreement, the United States agrees that it shall pay to Relator by electronic funds transfer 20 percent of each payment received under the Consent Judgment and Settlement Agreement as soon as feasible after receipt of the payment.

4

3.    Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon full payment of the Judgment Amount, and subject to Paragraph 18, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Carlton from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.    Subject to the exceptions in Paragraph 5 below and attorney's fees and costs for Relator as set forth in 31 U.S.C. §3730(d)(1), and conditioned upon full payment of the Judgment Amount, and subject to Paragraph 18, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Carlton from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.    Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability;

c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

      d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.     Any liability based upon obligations created by this Agreement;

      f.     Any liability of individuals;

      g.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

      6.     Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment(s) described in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

      7.     Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Carlton from any liability to Relator arising from the filing of the Civil Action.

      8.     In the event that Carlton fails to pay any amount as provided in Paragraph 1 within 10 business days of the date on which such payment is due, Carlton shall be in default of their payment obligations (Default). In the event of such Default, OIG-HHS may exclude Carlton from participating in all Federal health care programs until Carlton pay the Settlement Amount and reasonable costs as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to Carlton. Carlton waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in

any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Carlton wish to apply for reinstatement, Carlton must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Carlton will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

9.    Carlton waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.    Carlton fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Carlton has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

11.    Carlton fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Carlton has asserted, could have asserted, or may assert in the future against the Relator, related to Civil Action and the Relator's investigation, prosecution thereof, and the Relator's employment with Quality Therapy & Consultation, Inc.

12.    The Judgment Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, or any state payer, related to the Covered

7

Conduct); and Carlton agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

13.    Carlton agrees to the following:

a.    <u>Unallowable Costs Defined</u>:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Carlton, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

(3)    Carlton's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement; and

(5)    the payments that Carlton makes to the United States pursuant to this Agreement and any payments that Carlton may make to Relator, including costs and attorneys fees are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Carlton, and Carlton shall not charge such Unallowable Costs

8

directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Carlton or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:  Carlton further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Carlton or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Carlton agrees that the United States, at a minimum, shall be entitled to recoup from Carlton any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

    Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Carlton or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Carlton or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Carlton's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14.     Carlton agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Carlton shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Carlton further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

15.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16 (waiver for beneficiaries paragraph), below.

16.     Carlton agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

17.     Carlton warrants that it has reviewed its financial situation and currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Judgment Amount. Further, Carlton warrants that, in evaluating whether to execute this Agreement, it (a) has intended that the mutual promises,

10

covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Carlton, within the meaning of 11 U.S.C. § 547(c)(1), and (b) concludes that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, Carlton warrants that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Carlton was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

18.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Carlton commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Carlton's debts, or seeking to adjudicate Carlton as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Carlton, or for all or any substantial part of its assets, Carlton agrees as follows:

a.     Carlton's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Carlton shall not argue or otherwise take the position in any such case, proceeding, or action that:  (i) Carlton's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Carlton was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Carlton.

b.     If Carlton's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil

11

and/or administrative claim, action, or proceeding against Carlton for the claims that would otherwise be covered by the releases provided in Paragraphs 3 and 4 above.  Carlton agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Carlton shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Carlton shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar days of written notification to Carlton that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on March 25, 2014; and (iii) the United States has a valid claim against Carlton in the amount of $23,938,554, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c.    Carlton acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

19.    Upon full execution of this Agreement, under the terms of Paragraph 29, the Parties agree that the United States shall promptly submit this Consent Judgment and Settlement Agreement to the court for entry.

20.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception of attorney's fees and costs for Relator as set forth in 31 U.S.C. §3730(d)(1).

12

21.   Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

22.   This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Illinois. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.   This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24.   The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25.   This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.   This Agreement is binding on Carlton's successors, transferees, heirs, and assigns.

27.   This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

28.   All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29.   This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

JOHN R. LAUSCH, Jr.
United States Attorney

Dated: 6/6/19

By:

SARAH J. NORTH
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1413
sarah.north@usdoj.gov

Dated: 5/31/2019

By:

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Dep't of Health and Human Services

**THE CARLTON AT THE LAKE, INC.**

Dated: 5/20/19

JACK RAJCHENBACH
President, The Carlton at the Lake, Inc.

Dated: 5/21/19

CHRISTINA EGAN
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601

*Counsel for The Carlton at the Lake, Inc.*

14

KATHERINE VERHULST, RELATOR

Dated: 6/4/19

KATHERINE VERHULST, Relator

Dated: 6/5/19

BRIAN MARKOVITZ,
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

*Counsel for Relator Katherine Verhulst*

15

## Exhibit A

### Schedule of Payments

| Date | Payment | Rate | Balance | Days | Interest | Applied to Principal |
|---|---|---|---|---|---|---|
| Settlement | | | $3,634,426.00 | | | |
| Plus 15 days | $1,500,000.00 | 0.0255 | $2,134,426.00 | 0 | $0.00 | $1,500,000.00 |
| Plus 105 days | $274,407.52 | 0.0255 | $1,873,439.05 | 90 | $13,420.57 | $ 260,986.95 |
| Plus 195 days | $274,407.52 | 0.0255 | $1,610,811.10 | 90 | $11,779.57 | $ 262,627.95 |
| Plus 285 days | $274,407.52 | 0.0255 | $1,346,531.83 | 90 | $10,128.25 | $ 264,279.27 |
| Plus 375 days | $274,407.52 | 0.0255 | $1,080,590.86 | 90 | $8,466.55 | $ 265,940.97 |
| Plus 465 days | $274,407.52 | 0.0255 | $812,977.74 | 90 | $6,794.40 | $ 267,613.12 |
| Plus 555 days | $274,407.52 | 0.0255 | $543,681.95 | 90 | $5,111.74 | $ 269,295.78 |
| Plus 645 days | $274,407.52 | 0.0255 | $272,692.93 | 90 | $3,418.49 | $ 270,989.03 |
| Plus 735 days | $274,407.53 | 0.0255 | $0.00 | 90 | $1,714.60 | $ 272,692.93 |
| Total | $3,695,260.17 | | | | $60,834.17 | |

## **Exhibit B**

Guaranty Agreement between the United States and the Jack L. Rajchenbach Grandchildren's Trust

## GUARANTY AGREEMENT

This Guaranty Agreement is entered into as of May 20, 2019, by and among the Jack L. Rajchenbach Grandchildren's Trust (the "Trust"), through its co-trustees, Yosef Rajchenbach, Avrum Rajchenbach, Chaim Rajchenbach and Moshe Rajchenbach ("Guarantor") and the United States of America ("United States" or "beneficiary") (collectively the "Parties").

WHEREAS, Guarantor's individual co-trustees are the children of Jack L. Rajchenbach, who is both the grantor of the Trust and the owner of The Carlton at the Lake, Inc. ("Carlton"), an Illinois corporation;

WHEREAS, Carlton, which is no longer in business, was a skilled nursing facility that, among other things, provided skilled therapy services to Medicare beneficiaries through its contractor Quality Therapy & Consultation, Inc. (QTC). Carlton submitted claims for payment to the United States for those services to federal healthcare programs, using the National Provider Identifier, 1285796714;

WHEREAS, on March 25, 2014, Katherine Verhulst (Relator) filed a qui tam action in the United States District Court for the Northern District of Illinois, captioned *United States ex rel. Verhulst v. Quality Therapy & Consultation, Inc., et al.*, No. 14 C 2083 (the "Civil Action"), alleging violations of the False Claims Act by Carlton, among others, in connection with overbilling of Medicare and Medicaid for skilled nursing and skilled rehabilitation therapy services that were unnecessary and/or not provided;

WHEREAS, the United States intervened in the Civil Action on September 28, 2017;

WHEREAS, the parties to the Civil Action wish to settle, compromise, and resolve all issues and disputes between them through the execution of a Consent Judgment and Settlement Agreement and Exhibits thereto, including this Guaranty Agreement;

WHEREAS, by the terms of the Consent Judgment and Settlement Agreement, Carlton agrees to the entry of judgment in favor of the United States for $3,634,426;

WHEREAS, by the terms of the Consent Judgment and Settlement Agreement and its Exhibit A, Carlton further agrees to pay the United States the $3,634,426 judgment amount as follows: $1,500,000 no more than 15 days after the effective date of the agreement, and the balance in eight equal quarterly installments of $274,407.53 as specified in the payment schedule attached as Exhibit A to the Consent Judgment and Settlement Agreement.

WHEREAS, the Consent Judgment and Settlement Agreement incorporates this Guaranty Agreement as its Exhibit B, and is incorporated into this Guaranty Agreement, by reference;

WHEREAS, at the time of execution of this Guaranty Agreement, Guarantor Trust received assets representing the proceeds of the liquidation of Carlton's assets.

IT IS HEREBY AGREED that, in exchange for adequate consideration, the Parties shall undertake the following obligations:

## TERMS AND CONDITIONS

1. Statement of Guaranty. The Guarantor unconditionally guarantees the prompt payment of the full Judgment Amount, including interest, by Carlton as set forth in the Consent Judgement and Settlement Agreement.

2. Nature of Guaranty. The Guaranty set forth in Paragraph 1 of this Agreement constitutes a guaranty of payment of the full judgment amount, including interest, by Carlton as set forth in the Consent Judgment and Settlement Agreement, and shall not be affected by any event, occurrence or circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety (other than full and complete payment of the Judgment Amount). In the event that any payment by Carlton pursuant to the Consent Judgment and Settlement Agreement is rescinded or must otherwise be returned by virtue of any action by any bankruptcy court, the Guarantor shall remain liable hereunder with respect to such Judgment Amount as if payment had not been made. The Guarantor agrees that the United States may resort to Guarantor for payment of any part or all of the judgment balance, without regard to whether the United States shall have proceeded against any other person or entity primarily or secondarily obligated with respect to any of the Judgment Amount.

3. Notice and Acceleration. Guarantor agrees that, within ten days of written notice from the United States that Carlton has failed to timely make any payment required by the Consent Judgment and Settlement Agreement, Guarantor will be obligated to pay in full the amount then due under the Consent Judgment and Settlement Agreement. Guarantor understands that the failure to adhere fully to the terms of this paragraph would be a material breach of this Guaranty Agreement. Notice is sufficient under this Agreement when mailed by regular, first-class, pre-paid U.S. Mail, return receipt requested to: Christina Egan, McGuireWoods LLP, 77 West Wacker Drive, Suite 4100, Chicago, IL 60601.

4. No Waiver; Cumulative Rights. No failure on the part of the United States to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the United States of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power. Every right, remedy and power hereby granted to the United States or allowed by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by the United States from time to time.

5. Effective Date. This Guaranty Agreement shall become effective on the date the Consent Judgment and Settlement Agreement is executed.

6. Subrogation. Guarantor shall not exercise any subrogation rights it may acquire against Carlton because of this Guaranty Agreement until all of the Judgment Amount to the United States has been paid in full.

7. <u>Waiver of Notice</u>. Guarantor waives notice of the acceptance of this Guaranty, presentment, demand, notice of dishonor, protest, and all other notices whatsoever.

8. <u>Duration</u>. This Guaranty shall continue in full force and effect until the Judgment Amount and interest is fully satisfied.

9. <u>Entire Agreement</u>. Each Party hereto represents and warrants that this Agreement constitutes a valid and binding agreement enforceable against each Party in accordance with its terms. This Agreement embodies the entire guaranty agreement between the Parties. There are no promises, terms, conditions, or obligations other than those contained in this Agreement. This Agreement supersedes all previous communications, representations or agreements either verbal or written between Guarantor and the United States.

10. <u>Severability</u>. Should any one or more provisions of this Agreement be determined to be illegal, unenforceable, void or voidable, all other provisions shall remain in effect.

11. <u>Assignment</u>. No Party hereto may assign its rights, interest or obligations hereunder to any other person or entity without prior written consent of the other Party. The provisions of this Agreement shall be binding on the Parties hereto and their successors and assigns. This Agreement is to continue in full force and effect notwithstanding a change in the composition, ownership or corporate structure of the Guarantor.

12. <u>Miscellaneous</u>. This Agreement shall not be amended except in a writing signed by all Parties. Each signatory hereto represents and warrants that he or she is authorized to execute and deliver this Agreement on behalf of the Party for whom he or she is purporting to act. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same agreement.

13. <u>Governing Law; Consent to Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with federal common law. The Parties consent to the jurisdiction of the United States District Court for the Northern District of Illinois in any action or proceeding to enforce any term of this Agreement. Guarantor hereby appoints Christina Egan, McGuireWoods LLP, 77 West Wacker Drive, Suite 4100, Chicago, IL 60601, as its agent for service of process.

14. <u>Binding Authority</u>. Guarantor affirms that: (1) the Trust formation document and/or agreement(s) permits a trustee to lawfully enter into this Guaranty Agreement binding the Trust and its assets, and (2) that the co-trustees identified herein are—individually and/or jointly—specifically authorized to both sign this Guaranty Agreement and to cause the Trust to enter into this Guaranty Agreement, binding the Trust and its assets; and (3) the Guarantor's co-trustees identified herein have timely undertaken all acts and provided all notices to the Trust beneficiaries of the Trust's intention to irrevocably enter this Guaranty Agreement, including, but not limited to, allowing the Beneficiaries: (a) an opportunity to review this Guaranty Agreement and the Consent Judgment and Settlement Agreement;

(b) an opportunity to consult with legal counsel in connection with this matter; (c) an opportunity to express an objection to authorize Guarantor to enter into this Guaranty Agreement, and did not object; and (d) if necessary under the Trust, authorized the co-Trustees identified below in writing to execute this Guaranty Agreement and to take such further steps as necessary to carry out its terms.

### THE UNITED STATES OF AMERICA

JOHN R. LAUSCH, Jr.
United States Attorney

Dated: 6/6/19

By: _____
SARAH J. NORTH
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1413
sarah.north@usdoj.gov

Dated: _____

By: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Dep't of Health and Human Services

### GUARANTOR

### JACK L. RAJCHENBACH GRANDCHILDREN'S TRUST

By: _____

YOSEF RAJCHENBACH
Co-trustee, Jack L. Rajchenbach GC's Trust
6253 N. Central Park Avenue,
Chicago, Illinois 60659
Dated: May ___, 2019

By: _____

AVRUM RAJCHENBACH
Co-trustee, Jack L. Rajchenbach GC's Trust
431 Second Street
Lakewood, NJ 08701
Dated: May 29, 2019

By: _____

CHAIM RAJCHENBACH
Co-trustee, Jack L. Rajchenbach GC's Trust
6221 N. Central Park Avenue,
Chicago, Illinois 60659
Dated: May ___, 2019

By: _____

MOSHE RAJCHENBACH
Co-trustee, Jack L. Rajchenbach GC's Trust
6144 N. St. Louis Avenue
Chicago, Illinois 60659
Dated: May ___, 2019

4 of 4