## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), Ridgeview Rehab & Nursing Center, and Katherine Verhulst (hereafter collectively referred to as "the Parties"), through their authorized representatives.

**Recitals**

A. Ridgeview Rehab & Nursing Center (Ridgeview), is a skilled nursing facility that, among other things, provided skilled therapy services to Medicare beneficiaries through a contractor, Quality Therapy & Consultation, Inc. (QTC). Ridgeview submitted claims for payment to the United States for those services. Ridgeview has used the following National Provider Identifiers, 1366456261 and 1821005844, for submission of claims for payment to federal healthcare programs.

B. On March 25, 2014, Katherine Verhulst (Relator) filed a *qui tam* action in the United States District Court for the Northern District of Illinois, captioned *United States ex rel. Verhulst v. Quality Therapy & Consultation, Inc., et al.*, No. 14 C 2083, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and filed an amended complaint on July 18, 2016 (the Civil Action). She alleged that defendants conspired to overbill Medicare and Medicaid for skilled nursing and skilled rehabilitation therapy services that were unnecessary and/or not provided, and knowingly caused false and fraudulent claims to be presented to the United States and the State of Illinois. The United States intervened in the Civil Action on September 28, 2017.

C.  The United States contends that Ridgeview submitted, or caused to be submitted, or conspired to submit or cause the submission of, claims to the Medicare Program, Title XVIII of the Social Security Act.

D.  The United States contends that it has certain civil claims, as specified in Paragraph 3 of the Terms and Conditions below, against Ridgeview, for causing the submission of false claims to Medicare, including by violating the Anti-Kickback Statute, by engaging in the following conduct (hereinafter the Covered Conduct) from January 1, 2008 through February 28, 2014:

1.  Agreeing to pay, and paying, for referrals of Medicare beneficiaries to Ridgeview.

2.  Providing services, through QTC, that were not medically necessary and did not meet the requirements of Medicare Part A to Medicare beneficiaries in order to increase Medicare payments for those services, including in the following ways:

   a.  Setting, and striving to meet, quotas for the proportion of Medicare Part A beneficiaries utilizing the highest-possible reimbursement level (or RUG), particularly upon admission, regardless of the particular patients' actual needs.

   b.  Increasing the amount of reported therapy during "assessment reference periods" and then providing less therapy to those patients outside of those reference periods, prior to October 1, 2011.

   c.  Scheduling and claiming the provision of therapy, even after the patients' therapist had recommended discharge.

   d.  Scheduling and claiming the provision of skilled therapy, although the patient was not appropriate for skilled therapy, either at the level provided, for the discipline provided, or entirely.

2

  e. Scheduling and claiming the provision of therapy, even though skilled therapy services were not provided for that period.

  f. Shifting minutes of planned therapy among disciplines to ensure targeted therapy reimbursement levels were achieved, regardless of the clinical need for therapy.

  g. Reporting time spent on initial evaluation as therapy time rather than evaluation time.

  h. Reporting that skilled therapy had been provided when in fact the patients were not participating in therapy or unable to undergo or benefit from skilled therapy.

  i. Increasing the length of patients' receipt of skilled therapy services, in order to increase utilization of the 100-day maximum for Part A skilled therapy services, regardless of patients' actual needs.

  j. Conspiring to overbill Medicare, and/or conspiring to submit claims to the Medicare Program that the United States alleges were false due to the conduct described in Paragraphs D(2)(a)-(i) above.

  E. This Settlement Agreement is neither an admission of liability by Ridgeview nor a concession by the United States that its claims are not well founded.

  F. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

  To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

### Terms and Conditions

  1. Ridgeview shall pay the United States $1,000,000 (one million dollars) (Settlement Amount). The Settlement Amount constitutes restitution to the United States. Ridgeview shall

3

pay the Settlement Amount to the United States no later than 15 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of Illinois.

2. Conditioned upon the United States receiving payment of the Settlement Amount, the United States agrees that it shall pay to Relator by electronic funds transfer 20 percent of the Settlement Amount as soon as feasible after receipt of the payment.

3. Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon full payment of the Settlement Amount, and subject to Paragraph 19, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Ridgeview from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise, pursuant to 28 C.F.R. Part O, Subpart I, Section 0.45(D); or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 5 below, and attorney's fees, expenses, and costs for Relator as set forth in 31 U.S.C. §3730(d), and conditioned upon full payment of the Settlement Amount, and subject to Paragraph 19, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Ridgeview from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, and from any

4

claims that Relator has asserted, could have asserted, or may assert in the future against Ridgeview, related to the Covered Conduct and investigation and prosecution thereof.

5. Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals;

    g. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment(s) described in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7. With the exception of attorney's fees, costs, and expenses as set forth in 31 U.S.C. §3730(d), Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Ridgeview from any liability to Relator arising from the filing of the Civil Action.

8. Ridgeview has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Ridgeview warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Ridgeview had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Ridgeview on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $50,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Ridgeview previously undisclosed. Ridgeview agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

9. In the event that the United States, pursuant to Paragraph 8 (concerning disclosure of assets), above, opts to rescind this Agreement, Ridgeview agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Ridgeview that this Agreement has been rescinded, and (b)

relate to the Covered Conduct, except to the extent these defenses were available on March 25, 2014.

10. Ridgeview waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11. Ridgeview fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Ridgeview has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12. Ridgeview fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Ridgeview has asserted, could have asserted, or may assert in the future against the Relator, related to Civil Action and the Relator's investigation, prosecution thereof, and the Relator's employment with Quality Therapy & Consultation, Inc.

13. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, or any state payer, related to the Covered Conduct); and Ridgeview agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

14. Ridgeview agrees to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Ridgeview, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

(3) Ridgeview's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment Ridgeview makes to the United States pursuant to this Agreement and any payments that Ridgeview may make to Relator, including costs and attorneys fees.

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Ridgeview, and Ridgeview shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Ridgeview or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Ridgeview further agrees that within 90 days of the Effective Date of this Agreement it shall identify to

8

applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Ridgeview or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Ridgeview agrees that the United States, at a minimum, shall be entitled to recoup from Ridgeview any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Ridgeview or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Ridgeview or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Ridgeview's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15. Ridgeview agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Ridgeview shall encourage, and agrees not to impair, the cooperation of its directors, officers, and

employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Ridgeview further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

16. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 (waiver for beneficiaries paragraph), below.

17. Ridgeview agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18. Ridgeview warrants that it has reviewed its financial situation and currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, Ridgeview warrants that, in evaluating whether to execute this Agreement, it (a) has intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Ridgeview, within the meaning of 11 U.S.C. § 547(c)(1), and (b) concludes that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, Ridgeview warrants that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value

that is not intended to hinder, delay, or defraud any entity to which Ridgeview was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

19. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Ridgeview commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Ridgeview's debts, or seeking to adjudicate Ridgeview as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Ridgeview, or for all or any substantial part of its assets, Ridgeview agrees as follows:

a. Ridgeview's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Ridgeview shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Ridgeview's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Ridgeview was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Ridgeview.

b. If Ridgeview's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Ridgeview for the claims that would otherwise be covered by the releases provided in Paragraphs 3 and 4 above. Ridgeview agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case,

11

or proceedings described in the first clause of this Paragraph, and Ridgeview shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Ridgeview shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar days of written notification to Ridgeview that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on March 25, 2014; and (iii) the United States has a viable claim against Ridgeview in the amount of $21,789,020, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

  c. Ridgeview acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

  20. Upon receipt of the payment of the Settlement Amount, described above in Paragraph 1, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) (attached), with the exception that Relator retains her right to file a petition for attorney's fees, reasonable expenses, and costs. The Parties also agree that the United States shall file this Settlement Agreement with the court, after full execution of this Agreement, under the terms of Paragraph 30.

  21. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception of attorney's fees and costs for Relator as set forth in 31 U.S.C. §3730(d).

  22. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

23. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Illinois. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

25. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

26. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27. This Agreement is binding on Ridgeview's successors, transferees, heirs, and assigns.

28. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

29. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

30. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

JOHN R. LAUSCH, Jr.
United States Attorney

Dated: 5/13/19.

By: /s/ Linda A. Wawzenski for
SARAH J. NORTH
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1413
sarah.north@usdoj.gov

Dated: 5/06/2019

By: /s/ Lisa M. Re
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Dep't of Health and Human Services

14

RIDGEVIEW REHAB & NURSING CENTER

Dated: 04/25/19

*(signature)*
JEFF WEBSTER, President
Ridgeview Rehab & Nursing Center

Dated: 04/29/2019

*(signature)*
STEVEN MILLER
BRADLEY BOLERJACK
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
*Counsel for Ridgeview Rehab & Nursing Center*

<u>KATHERINE VERHULST, RELATOR</u>

Dated: 4/30/19

*signature*
KATHERINE VERHULST, Relator

Dated: 4/30/19

*signature*
BRIAN MARKOVITZ
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

*Counsel for Relator Katherine Verhulst*